IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

No. 2:20-CV-85-RJ

SAMANTHA LYNN GROVATT,

        Plaintiff/Claimant,

v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

        Defendant.

O R D E R

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-15, -18] pursuant to Fed. R. Civ. P. 12(c). Claimant Samantha Lynn Grovatt ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of her application for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, Claimant's Motion for Judgment on the Pleadings is denied, Defendant's Motion for Judgment on the Pleadings is allowed, and the final decision of the Commissioner is affirmed.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on April 25, 2018, alleging disability beginning April 23, 2018. (R. 16, 164–65). Her claim was denied initially and upon reconsideration. (R. 16, 62–95). A hearing before the Administrative Law Judge ("ALJ") was held on January 9, 2020, at which Claimant, represented by counsel, and a vocational expert ("VE") appeared and testified. (R. 32–61). On February 10, 2020, the ALJ issued a decision

denying Claimant's request for benefits. (R. 13–31). On October 2, 2020, the Appeals Council denied Claimant's request for review. (R. 1–7). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

In this case, Claimant alleges the Appeals Council erred in determining that additional evidence submitted to it for the first time did not show a reasonable probability that it would change the outcome of the decision, and the ALJ improperly evaluated the opinion evidence of the consultative psychologist, Dr. Bing. Pl.'s Mem. [DE-16] at 12–23.

3

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful employment since the alleged onset date of April 23, 2018. (R. 18). Next, the ALJ determined Claimant had the severe impairments of bipolar disorder, anxiety disorder, and post-traumatic stress disorder, and the nonsevere impairment of irritable bowel syndrome. (R. 18–19). However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 19–21). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments resulted in moderate limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (R. 19–20).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform a full range of work at all exertion levels with the following nonexertional limitations:

> She has a reasoning level of "2" which, as defined in the Dictionary of Occupational Titles (DOT), denotes the ability to apply commonsense understanding to carryout detailed but uninvolved oral and written instructions and deal with problems involving a few concrete variables in or from standardized situations encountered on the job. The hypothetical claimant would also have the ability to do simple, routine repetitive tasks in two-hour intervals; occasionally have direct interaction with the general public, coworkers and supervisors, and perform jobs not requiring the individual to complete a specific number of production quotas on a defined timeline or to do fast paced assembly line work[.]

(R. 21–25). In making this assessment, the ALJ found Claimant's statements about her limitations not entirely consistent with the medical and other evidence in the record. (R. 22). At step four, the ALJ concluded Claimant could not perform the requirements of her past relevant work as a

4

teacher. (R. 25). Nonetheless, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 26).

## V. DISCUSSION

### A. Evidence Submitted to the Appeals Council

After the ALJ issued an unfavorable decision on February 10, 2020, Claimant sought review from the Appeals Council and submitted, for the first time, a mental functional capacities assessment, dated May 15, 2020, from Kristin N. Kaul, a licensed psychological associate, who had treated Claimant since December 2013. (R. 9–10). The Appeals Council determined the evidence did not relate to the period at issue and, therefore, did not affect the decision about whether Claimant was disabled beginning on or before February 10, 2020. (R. 2). Claimant contends the Appeals Council erred by not considering Kaul's opinion or by not remanding the case to the ALJ for further consideration of the new evidence. Pl.'s Mem. [DE-16] at 12–20. Defendant argues the Appeals Council's decision was proper because the additional evidence did not relate to the period at issue and there was no reasonable probability that the evidence would change the outcome of the decision. Def.'s Mem. [DE-19] at 5–10.

The Appeals Council will review a case if it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5); *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93 (4th Cir. 1991). Evidence is "new" if it is not duplicative or cumulative. *Wilkins*, 953 F.2d at 96. "Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." *Id.* New and material evidence "need not have existed during [the relevant] period, but

5

rather must be considered if it has any bearing upon whether the claimant was disabled during the relevant period of time." *Outlaw v. Colvin*, No. 5:11-CV-647-FL, 2013 WL 1309372, at * 2 (E.D.N.C. Mar. 28, 2013) (citing *Wooldridge v. Bowen*, 816 F.2d 157, 160 (4th Cir. 1987)). "Evidence may relate back to the period on or before the ALJ's decision even if it postdates the decision." *Shuman v. Berryhill*, No. 3:16-CV-62, 2017 WL 3476972, at *3 (N.D.W. Va. Aug. 14, 2017) (citation omitted). The court conducts a *de novo* review of whether the additional evidence was new and material. *See Coleman v. Berryhill*, No. 6:17-CV-2613-TMC, 2019 WL 850902, at *3 (D.S.C. Feb. 22, 2019); *Kiro v. Berryhill*, No. CV 18-89 SCY, 2019 WL 1331903, at *5 (D.N.M. Mar. 25, 2019) ("Whether evidence qualifies for consideration by the Appeals Council is a question of law subject to our *de novo* review.").

Kaul's May 15, 2020 opinion, on a check-the-box form with some notes, indicates that she treated Claimant from December 2013 to present, and Claimant suffers from post-traumatic stress disorder, bipolar II disorder, generalized anxiety, and other specified personality disorder with mixed personality features. (R. 9). Kaul stated that Claimant's prognosis was poor, and explained that "stressors inherent [within] social interactions and employment result in an escalation of Mrs. Grovatt's symptomology and significantly impair her ability to perform essential activities of daily living." (R. 9–10). Kaul indicated Claimant was, in relevant part, markedly limited in the ability to understand and remember short and simple instructions, sustain an ordinary routine without special supervision, make simple work-related decisions, interact appropriately with the general public, and get along with co-workers or peers; and extremely limited in the ability to understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, work in coordination with or proximity to others without being distracted, complete a normal workday and workweek without interruption from psychologically based symptoms,

6

perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions or respond appropriately to criticism from supervisors, and respond appropriately to customary stresses in a work setting. *Id.*

Assuming Kaul's opinion did, in fact, relate to the period before the ALJ's decision, because it was issued only three months after the ALJ's decision by Claimant's long-time mental health treatment provider and discussed Claimant's limitations related to conditions from which she suffered during the relevant period, the court agrees with Defendant that Claimant failed to demonstrate there is a reasonable probability that Kaul's opinion would have changed the outcome of the decision. *See Lockaby v. Saul*, No. 4:18-CV-02056-DCN-TER, 2020 WL 1149725, at *4 (D.S.C. Mar. 10, 2020) (concluding it was not improper for the magistrate judge to consider the other factors articulated in 20 C.F.R. § 404.970 beyond the one specifically mentioned by the Appeals Council, particularly where claimant argued other factors). Claimant argues that Kaul's opinion could reasonably impact the final outcome in the case because, in determining Claimant's RFC, the ALJ "did not list the real limitations relating to Plaintiff's functionality," and Kaul's treatment notes, other objective evidence in the record, and Claimant's testimony support the limitations in Kaul's opinion. Pl.'s Mem. [DE-16] at 15–20. Claimant's argument is not supported by the record.

The ALJ acknowledged Claimant's mental health history dating well-prior to the alleged onset date of April 23, 2018, which included a week-long in-patient hospitalization due to suicidal thoughts in 2016. (R. 22). The ALJ discussed Claimant's treatment in 2016 and 2017, including a June 12, 2017 psychological evaluation from Kaul indicating Claimant sought treatment "due to the reemergence of anxiety and depressive symptoms brought on by the pressures of her job as a special education teacher." (R. 23, 363). Claimant was noted at the time as alert and oriented but

7

with attention and concentrated limited to five to seven minutes, her through processes were goal directed and relevant, her thought content was intact, she endorsed auditory hallucinations when under a great deal of stress (last occurring approximately six weeks prior), her mood was anxious with congruent affect, her memory was somewhat impaired for immediate events and intact for recent and remote events, and her social judgment and impulse control, as assessed by history, were fair. (R. 360–61). Kaul recommended continued outpatient psychotherapy to address Claimant's depressive symptomology and anxiety, including interventions aimed at preoccupation with somatic symptoms and physical discomfort. (R. 363). At the same time, Claimant was also receiving medication management for her mental impairments from another provider who, on July 20, 2017, noted Claimant denied any current or recent history of psychological symptoms, her symptoms were well managed with her current treatment, her mental status exam was normal with "good" mood and "bright" affect, normal memory, and good judgment, insight, and attention/concentration. (R. 23, 384, 390). The ALJ found that between October 2017 and March 2018, Claimant's medical records continued to show largely normal mental status, despite complaints of sleep disturbance and depression on some occasions, for which her medications were adjusted. (R. 23, 416–32). A treatment note from February 1, 2018, states Claimant used marijuana daily as a substitute for her medications. (R. 422).

Treatment notes from Claimant's psychotherapy visit with Kaul in September 2018 indicated Claimant's behavior was normal, she was alert with logical and linear thought process but had future oriented thought content with ruminations and paranoia, and she was sad/depressed and tearful with poor insight. (R. 23, 446–47). Kaul discussed stressors related to a recent family gathering and Claimant's inability to maintain employment as an educator due to her mental health symptoms. (R. 447). Kaul also noted that Claimant was not taking any medications for her mental

8

health, and Kaul believed medication targeting Claimant's emotional dysregulation would be beneficial. *Id.* The ALJ found nothing in Kaul's notes that would indicate Claimant was functionally limited outside of the elevated stress, somatic complaints, and anxiety specifically related to Claimant's job stress as a special education teacher. (R. 23).

The court finds little in the treatment notes of Kaul or Claimant's other providers that would support the extreme limitations in Kaul's May 15, 2020 opinion, and no new treatment records were submitted that might otherwise support Kaul's opinion. In fact, records show that Claimant was functioning well on her medications in July 2017, but later stopped taking her medications and would not reconsider restarting medication despite Kaul's recommendation. (R. 384, 447). Given that Kaul's opinion is not supported by her own treatment records and inconsistent with other evidence of record, 20 C.F.R. § 404.1520c(a), the court cannot find that there is a reasonable probability the opinion would change the outcome of the decision. Furthermore, that Kaul is a treatment provider and her opinion conflicts with the RFC is alone not enough to mandate remand. *See Erskine v. Kijakazi*, 2022 WL 561511, at *13 (M.D.N.C. Feb. 24, 2022) (finding that "a policy of blanket remand when the opinions are first submitted to the Appeals Council would create an incentive for claimants to avoid submitting treating physician opinions to the ALJ") (citing *Moseley v. Berryhill*, No. 6:18-1389, 2019 WL 2107917, at *11 (D.S.C. Apr. 22, 2019)).

As the ALJ noted, the record reflects that Claimant's mental impairments prevented her from performing stressful teaching jobs, and the ALJ imposed restrictive nonexertional limitations in the RFC to account for Claimant's mental limitations, including limitations to simple, routine, repetitive tasks at no more than a reasoning level of two; only occasional interaction with the general public, co-workers, and supervisors; and no production quotas or fast-paced assembly line work. (R. 21). The court cannot find that consideration of Kaul's opinion would have changed

9

the decision. *See Moseley*, 2019 WL 2107917, at *11–12 (finding Appeals Council did not err in determining that new evidence failed to raise reasonable probability of different outcome, and noting that "elements of [the new psychiatric] opinions [we]re refuted by evidence in the record before the ALJ — including [psychiatrist]'s own records" and that, "although the ALJ did not have the opportunity to review [the psychiatrist]'s [new] opinions, [the ALJ] relied on substantial evidence in reaching his conclusion that would have been relevant to the analysis of the opinion under 20 C.F.R. §[ ] 404.1527(c)"). Accordingly, remand is not appropriate based on the Appeals Council's failure to consider Kaul's opinion.

### B. Dr. Bing's Opinion

Claimant contends the ALJ erred in evaluating the opinion of Dr. Bing, a consultative psychological examiner, because the ALJ adopted part of Dr. Bing's opinion and did not adequately explain why he found the remainder of the opinion not persuasive. Pl.'s Mem. [DE-16] at 20–23.

When assessing a claimant's RFC, the ALJ must consider the opinion evidence. 20 C.F.R. § 404.1545(a)(3). Because Claimant protectively filed her application on or after March 27, 2017, 20 C.F.R. § 404.1520c governed how the ALJ considered the medical opinions in Claimant's case. The applicable regulation provides the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, the ALJ must consider the persuasiveness of medical opinions using five factors: (1) supportability, meaning that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions or prior administrative medical finding(s) will be"; (2) consistency, meaning that the more consistent an opinion is with other evidence in the record, the more persuasive the

10

medical opinion will be; (3) the medical source's relationship with the claimant, which considers the length of the treating relationship, frequency of examinations, purpose of the treating relationship, extent of the treatment relationship, and whether the medical source examined the claimant; (4) specialization, meaning that "a medical source who has received advanced education and training to become a specialist may be more persuasive"; and (5) other factors that tend to support or contradict a medical opinion." *Id.* § 404.1520c(c)(1)–(5). The most important factors are supportability and consistency. *Id.* § 404.1520c(a). The regulation also requires the ALJ to "articulate in [her] determination or decision how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record." *Id.* § 404.1520c(b).

On November 26, 2018, Dr. Bing provided a consulting psychological evaluation of Claimant. (R. 451–54). Claimant reported to Dr. Bing that she left her teaching jobs because they were too stressful and she became depressed and had suicidal thoughts. (R. 451). Claimant also indicated having what Dr. Bing characterized as hypomanic episodes where she would go several days and nights with little need for sleep and she would experience rages. (R. 451–52). Dr. Bing observed Claimant was very sensitive to interpersonal rejection, was a perfectionist, and reported symptoms consistent with obsessive-compulsive disorder. (R. 452). Claimant reported that she had not taken any medications for a year or so, and claimed none of her medications provided benefit. *Id.* Claimant's affect was somewhat restricted and her mood was slightly anxious, but her mental status was otherwise normal. (R. 453). Dr. Bing concluded that Claimant demonstrated the ability to generally understand, retain, and follow instructions as well as the ability to sustain attention to perform simple repetitive tasks, although Dr. Bing believed Claimant's "report of mood and anxiety symptoms could interfere with even sustaining attention to perform simple and

11

repetitive types of tasks over the course of an 8-hour workday particularly if she had to make decisions." (R. 454). Dr. Bing further opined that Claimant's sensitivity to rejection could cause difficulties in interpersonal relations in the work setting, and that, given the totality of Claimant's disorders, she could have difficulty tolerating the stress and pressure associated with day-to-day work activity. *Id.*

> The ALJ evaluated Dr. Bing's opinion as follows:
>
> The opinion that the claimant could understand, retain and follow instructions and sustain attention for simple, repetitive tasks is persuasive. It is consistent with the doctor's evaluation. His mental status examination showed an[] oriented, cooperative and polite individual who was only slightly anxious with a somewhat restricted mood. The claimant maintained good eye contact and was able to express herself adequately. She was able to repeat six digits forward and four digits backward. She recalled four of five items after five minutes and when given a multiple-choice format involving two choices regarding the remaining item, she was able to pick out the correct item. She talked about cleaning the house all day the day before the evaluation. She knew the current and immediate previous president. She counted backwards from 30 by threes without error and was able to perform simple mathematical calculations. She understood similarities and differences among common objects and indicated appropriate judgment based on her response to questions (Exhibit 11F).
>
> However, the doctor's more speculative comments about difficulty tolerating the stress and pressure associated with "day-to-day work activity" is somewhat vague and open to interpretation. Thus, they are not so persuasive. The doctor does not define "day-to-day work activity" or the level of limitation that the claimant might experience given various work settings as to complexity of tasks required, level of social interaction, or level of decision-making that might be required.

(R. 25).

The ALJ sufficiently explained why he found persuasive some of Dr. Bing's opinions but not others. Dr. Bing expressed some reservation about Claimant's ability to sustain attention to perform simple and repetitive tasks over an eight-hour workday, "particularly if she had to make decisions," and about Claimant's ability to interact with others and to tolerate the stress and pressure of day-to-day work. (R. 454). The ALJ found these comments to be "speculative,"

12

"somewhat vague," and "open to interpretation." (R. 25). The ALJ went on to explain that it was unclear what type of work activity or level of limitation Claimant might experience given the various levels of task complexity, social interaction, and decision making that might be required. *Id.* The court can trace the ALJ's reasoning in finding some of Dr. Bing's opinions not as persuasive because they were vague and speculative, and the court has previously held that an ALJ did not err in giving a medical opinion partial weight for these reasons. *See Lamb v. Saul*, No. 2:19-CV-26-FL, 2020 WL 6391097, at *4 (E.D.N.C. July 6, 2020), *report and recommendation adopted,* 2020 WL 4784699 (E.D.N.C. Aug. 18, 2020); *Vanderpool v. Berryhill*, No. 5:18-CV-44-RJ, 2019 WL 118414, at *5 (E.D.N.C. Jan. 7, 2019).

Furthermore, the ALJ's RFC accounted for the issues for which Dr. Bing expressed concern. Dr. Bing suggested that decision making could interfere with Claimant's ability to sustain attention, and the ALJ limited Claimant to work at reasoning level two, which requires dealing only with "problems involving a few concrete variables in or from standardized situations," which would involve limited decision making. (R. 21); *see Weaver v. Colvin*, Civil Action No. 1:12-CV-02870-JMC, 2014 WL 1320009, *3 (D.S.C. Mar. 31, 2014) (finding that there was no conflict between the DOT requirements for the identified jobs that had a reasoning level of two and the RFC limitations assessed by the ALJ that included low-stress work, defined as no more than occasional decision making). Dr. Bing also expressed concern about Claimant's ability to interact with others and to tolerate the stress and pressure of work, and the ALJ limited Claimant to only occasional interaction with others and jobs not requiring production quotas on a timeline or fast-paced assembly work, which is generally recognized as low-stress work. *Id.*; *see, e.g., Anderson v. Comm'r of the Soc. Sec. Admin.*, 1:20-CV-329-WCM, 2022 WL 702437, at *1 (W.D.N.C. Mar. 8, 2022) (noting the ALJ defined low-stress work as "non-production work, with no fast-paced work

13

such as an assembly line where one must produce a product in a high-speed manner"). Accordingly, Claimant has failed to demonstrate the ALJ committed reversable error in evaluating Dr. Bing's opinion.

## VI. CONCLUSION

For the reasons stated above, Claimant's Motion for Judgment on the Pleadings [DE-15] is DENIED, Defendant's Motion for Judgment on the Pleadings [DE-18] is ALLOWED, and the final decision of the Commissioner is AFFIRMED.

So ordered, this the 14th day of March, 2022.

Robert B. Jones, Jr.
United States Magistrate Judge

14